Before STATE INDUSTRIAL BOARD, Respondent.

In the Matter of the Claim of ANTONNA DRAZAL and JOSEPHINE DRAZAL, Respondents, for Compensation under the Workmen's Compensation Law for the Death of STEVE DRAZAL, *v.* STEPHEN SANFORD & SONS, Employer, and AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, November 15, 1922.

**Workmen's Compensation Law — employee caught by freight elevator and killed — evidence sustains award.**

The evidence sustains the award for the death of a member of a shipping gang in a manufacturing plant, as it appears that at the time of the accident his gang was engaged at the sixth floor loading carpets upon a freight elevator; that he left the gang before the loading was complete and went to the fifth floor to eat his lunch; that after eating his lunch he went down to the third floor where his

body was found under the elevator gate with his head, which was partially severed from his body, hanging over the elevator well. The inference is, from the facts outlined and from the admission of the employer, that the decedent lifted the elevator shaft gate and looked down the shaft, that he did so for the purpose of ascertaining where his services were required, whether at the sixth floor where the elevator was loaded or at the bottom floor where it was to be unloaded. .

APPEAL by the defendants, Stephen Sanford & Sons and another, from a decision and awards of the State Industrial Board, made on the 10th day of August, 1921, and the 12th day of April, 1922, respectively.

*Clarence B. Tippett,* for the appellants.

*Charles D. Newton, Attorney-General [E. C. Aiken, Deputy Attorney-General, of counsel],* for the respondents.

H. T. KELLOGG, Acting P. J.:

The deceased employee was a member of a shipping gang at the plant of the employer. The gang was engaged at the sixth floor of a building loading carpets upon an elevator. The deceased employee left the gang before the loading was complete. He remarked that he was going to the fifth floor to get a bite of lunch. This was in accordance with permitted practice. When the elevator had been loaded the remainder of the gang descended by a staircase to the ground floor in order to unload the carpets. Meanwhile, the elevator came slowly down the shaft to the same floor. While the men were engaged in taking out the carpets blood was observed to be trickling down the shaft. Thereupon it was discovered that the dead body of the deceased employee was lying upon the third floor with head projecting into the shaft and partly severed at the neck. The gate or door of the shaft was partly up and rested upon the dead body at the shoulders. According to the employer's report: " When he [the deceased employee] reached the third floor he evidently raised elevator shaft gate and looked down shaft, and while in this position elevator came down, pulling his head between elevator car and third floor of building No. 52. No one saw accident. When found Drazal's head was hanging over edge of elevator shaft with the gate resting across the back of his shoulders." According to the findings of the State Industrial Board: " He lifted the elevator shaft gate on the third floor of said building to see if the elevator had gone down from the fifth floor in order to unload the elevator when it reached the first floor, and his head was thereupon caught between the elevator car and the third floor." This was an inference drawn from the known facts and the admissions of the employer. When the deceased employee

was upon the fifth floor eating a bite of lunch the work of loading at the sixth floor, of which it was his duty to perform a part, was incomplete. While descending to the third floor, doubtless, on his way to the ground floor to assist in taking out the carpets, it may well have crossed his mind that the elevator was yet at the sixth floor, and the loading still unfinished. So, doubt as to the place of work where his immediate presence was required may have entered. We know through his employer's admission that he " lifted the elevator shaft gate and looked down shaft." That he did so in order to solve his doubt is the only likely inference. It was his duty to get to work at once. But where? It was his duty to solve the question. So, although his act may have been imprudent, it was in line with the ultimate performance of his duty that he raised the gate and looked down the elevator shaft. We think the award is supported by a permissible inference, and a permissible inference is legal evidence.

The award should be affirmed, with costs to the State Industrial Board.

Present — H. T. KELLOGG, Acting P. J., KILEY, VAN KIRK, HINMAN and HASBROUCK, JJ.

Award unanimously affirmed, with costs in favor of the State Industrial Board.